**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **MANUEL PENA** | ) | |
| | ) | |
| **v.** | ) | CASE NO.: |
| | ) | 1:22-MC-91239-ADB |
| **SUPERINTENDENT OF MCI** | ) | |
| **SOUZA BARANOWSKI STATE PRISON** | ) | |
| | ) | |

**SUPPLEMENTAL MOTION TO EXTEND
DEADLINE TO FILE HABEAS CORPUS PETITION
AND/OR TO HOLD HABEAS CORPUS PETITION IN ABEYANCE**

NOW COMES the Petitioner in the above-captioned matter, MANUEL PENA, and respectfully moves this Honorable Court to stay the proceedings in this matter and hold his habeas corpus petition under 28 USC 2254 in abeyance to allow the Defendant to exhaust his state remedies. The Defendant filed the original motion seeking this relief with the Federal Court on or about May 17, 2022. The Clerk's Office ultimately docketed this matter, and notice was sent in July 2022 seeking additional information. The Defendant hereby supplements this request for relief by providing the additional information contained herein. The Defendant incorporates the first motion by reference and expands on the issues raised as follows:

1. The Defendant states that Petitioner has a "mixed" federal habeas corpus petition, containing some claims that have been exhausted in the state courts and some that have not.

1

2. The Defendant Petitioner asserts that a "Stay and Abeyance" procedure – under which a Federal District Court stays the mixed petition to allow the prisoner to (1) to present the unexhausted claims to a state court in the first instance, and (2) then, to return to federal court for a review of the perfected petition- is in order because there is good cause for the prisoner's failure to exhaust the claims first in state court and because Petitioner's claims have merit. See *Rhines v. Weber*, 544 US 269, 277-279 (2005).

3. The Commonwealth delayed Petitioner's ability to file a habeas corpus petition due to the state action related to transfers between prisons, denial of access to law library, and restrictions created by COVID-19. The Petitioner was just recently granted access to the law library again and states the filing deadline should begin to run as of May 17, 2022 since the obstacles were recently lifted at the time of the first filing for this relief. Defendant now has access to Law Library, albeit still limited hours and limited availability. Alternatively, the time should start to run from July 1, 2022 when the Court filed the Defendant's first motion filing for this relief.

4. Due to COVID-19 protocols and procedures, the Petitioner was denied regular, consistent, and effective access to the law library for the last two years which prevented

Petitioner from perfecting a habeas corpus petition. Throughout the pandemic, the Petitioner was denied access for safety protocol. Then, the Petitioner was recently transferred to Souza Baranowski where access to the library is limited to two times per month. The number of trips to the law library since his recent transfer have been insufficient to prepare the habeas corpus petition and/or the related state relief.

5. Accordingly, Petitioner seeks an extension of the filing deadline and requests that the clock for 1 year and 90 days start to run as of May 17, 2022 as some of the obstacles have been removed or from July 1, 2022 when the first pleading was finally entered in Federal Court.

6. Additionally, Petitioner's good cause for not exhausting his claims first in state court is due to COVID-19, the new protocols created in the state prisons due to COVID-19, the limited ability to hire a new attorney for this matter, waiting for investigation, and the Petitioner's limited access to the law library as a result. Petitioner was denied access to the law library for most of the time in prison during the COVID-19 pandemic. The Petitioner was also transferred between MCI-Shirley and MCI-Souza Baranowski prisons which caused additional delay. Defendant was wrongfully harassed and sent to the hole

without privileges without basis to do so. The Defendant has filed an appeal with the Department of Corrections for this wrongdoing.

7. Petitioner has since hired new private counsel as successor counsel to perfect an additional review in the state court of his underlying conviction, namely to file a motion for new trial based on issues not properly raised by prior counsel. This happened just a few months ago, and the attorney and Defendant and working diligently to file the motion for new trial this year with the new evidence from the recent investigation.

8. The Petitioner seeks relief in state court including ineffective assistance of counsel, due process violations, fair trial violations, and other grounds for a new trial related to the bias and false testimony of the complaining witness in this case, the alleged victim. Petitioner has sought the help of a private investigator to show it was impossible for the complaining witness to see what he claimed through his bedroom window. This testimony wrongfully placed the Defendant at the scene of the crime. This motion for new trial has merit.

9. The original trial counsel for Defendant failed to adequately investigate the case and prepare the case for trial. The trial lawyer should have utilized an

investigator to properly show that it was impossible for the alleged victim to see what he claimed he saw through the first-floor bedroom window. An investigation by successor counsel through a private investigator has revealed that it is, in fact, not possible to view the areas of the parking lot through the bedroom window from the bed in the first-floor bedroom as claimed by the alleged victim. More evidence regarding this issue should have been presented at trial.

10. The trial counsel was ineffective by failing to properly develop, investigate, and introduce evidence of bias of the alleged victim at trial. The alleged victim was rewarded with housing benefits as a result his cooperation, namely his own apartment. Trial counsel was ineffective in his failure to properly investigate this, develop this, and highlight this at trial for the jury's consideration. The benefits received by the lead witness, the alleged victim, was a crucial area of cross examination that fell well below professional standards of an effective defense attorney at trial. The benefits received by alleged victim should have been used at trial as part of the defense, and this failure was not a strategic decision. Bias is crucial area of cross examination, an important part of a solid defense, and required for trial counsel to offer effective

assistance to the Defendant. The attorney's failure to use bias of the alleged victim created by the benefits he received as a cooperating alleged victim at trial deprived the Defendant of a fair trial. Bias is necessary information for the jury to deliberate and properly assess credibility of the witnesses at trial. This issue is for the jury to decide, and the Court should not determine whether this is a strategic decision, but instead, it is well settled that failure to use bias is unreasonable and contrary to the fair professional practice of law. See *Wood v. Allen*, 558 US ___ (2010), Docket 08-9156, US Appeals for Eleventh Circuit regarding the Defendant's claims for ineffective assistance of counsel.

11. The Defendant was denied a fair trial due to ineffective assistance of counsel. Massachusetts case law guarantees the Defendant a fair trial with effective counsel. This includes properly raising and establishing bias at trial. Where facts show bias or motive to lie, the Defendant has a right to effective cross-examination through his attorney. See *Commonwealth v. Ellis*, 432 Mass. 746 (2000).

12. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. See *Davis v. Alaska*, 415 U.S. 308, 315-319 (1974). A more particular attack on the witness'

credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony" *Id*.

13. The Court may not restrict cross examination of a material witness by stopping or preventing questions that raise a crucial bias issue. This is the Defendant's right at trial, and trial counsel failed to adequately raise the bias issues for Defendant Pena. The credibility of the witness is a crucial issue for the jury to decide, and the Defendant is entitled to a defense that includes an attack on the witness due to his bias. In Mr. Pena's case, the witness was getting benefits, housing, and money from the government, and this bias was not properly used at trial by his attorney. Defendant has the right to bring to the attention of the jury any "quid pro quo" agreement between the prosecution and a testifying witness, whether formal or informal, written or unwritten. See *Commonwealth v. Davis*, 52 Mass. App. Ct. 75, 78-79 & n.7 (2001) and *Commonwealth v. O'Neil*, 51 Mass. App. Ct. 170, 179 (2001).

14. As discussed above, trial counsel for Mr. Pena failed to properly use the bias information created by the benefits gained by the alleged victim. The failures regarding bias evidence cannot be ignored as a strategic decision by trial counsel as it was clearly ineffective assistance of counsel.

15. Additionally, the trial attorney for Defendant Pena failed to properly investigate and prepare for trial with the use of an impeachment witness, namely the Defendant's Grandmother. She lived in the apartment above the alleged victim. The trial attorney was aware of Mr. Pena's desire to call Grandmother as a witness at trial, but the lawyer failed to do so. This became a crucial issue at trial as the alleged victim testified to many lies at trial regarding Grandmother, their relationship, his familiarity with Grandmother, her familiarity with him, and testified about his familiarity of Mr. Pena claiming that it was due to Mr. Pena living in the apartment with Grandmother. The witness testified that they were close and he was very familiar with her and her family, including Mr. Pena, because she regularly cooked meals for him, cooked together, shared with him, and he claimed that he worked on her car for her to help with repairs. This never happened. Grandmother would have testified that Mr. Pena did not live

with her and was not there often.  She would have testified that she never interacted with the alleged victim, did not share with him, did not cook meals together, did not cook meals for him, and he did not work on or otherwise repair her car.  The attack of the alleged victim's claimed familiarity was a crucial issue at trial, and the trial attorney should have properly prepared these issues for trial, properly investigated this matter, and properly called her at trial as a witness to impeach the credibility of the witness and familiarity claimed by the witness.  These failures by trial counsel constitute ineffective assistance of counsel, and the decision not to investigate and not to call her as a witness cannot he ignored as a strategic decision by counsel.  This was ineffective assistance of counsel that severely prejudiced the Defendant and hurt his defense at trial.

16. In *Alcorta v. Texas*, the Court held that a habeas petitioner had been denied due process of law when a prosecutor allowed a witness to give the jury a "false impression" of his relationship with the petitioner's wife. See *Alcorta v. Texas*, 355 U.S. 28 (1957).  Under the general principles laid down by this Court in *Mooney* v. *Holohan*, 294 U.S. 103, and *Pyle* v. *Kansas*, 317 U.S. 213, petitioner was not accorded due process of law.

*Id.* at 31. "It cannot seriously be disputed that Castilleja's testimony, taken as a whole, gave the jury the false impression that his relationship with petitioner's wife was nothing more than that of casual friendship. This testimony was elicited by the prosecutor who knew of the illicit intercourse between Castilleja and petitioner's wife. Undoubtedly Castilleja's testimony was seriously prejudicial to petitioner. It tended squarely to refute his claim that he had adequate cause for a surge of "sudden passion" in which he killed his wife. If Castilleja's relationship with petitioner's wife had been truthfully portrayed to the jury, it would have, apart from impeaching his credibility, tended to corroborate petitioner's contention that he had found his wife." *Id.* at 31-32. In Mr. Pena's case, the jury was left with a "false impression" of the alleged victim's relationship with Mr. Pena, his family, and his Grandmother. The witness claimed he was far more familiar with them than he actually was. As discussed, Grandmother should have been called to testify to dispute the familiarity claims by the witness. Grandmother did not know the alleged victim at all. They did not interact, they did not share meals, they did not help each other as claimed, and it is not possible that the alleged victim was familiar with the family and Grandmother

as claimed.  The jury was left with a false impression of Grandmother and the alleged victim's relationship. Grandmother should have been called to testify at trial.

17. The prosecution relied on the false testimony of the alleged victim to try to prove the case beyond a reasonable doubt and relied on the false testimony to making closing arguments to the jury.  The prosecution relied on the alleged victim's claims that he could see out of the bedroom window, could see Mr. Pena in the parking lot, and relied on the alleged victim's familiarity of Grandmother and her family, including Mr. Pena.  The credibility of the alleged victim was not properly attacked by the defense such that the prosecution's lead witness convinced the jury and Defendant was convicted at trial.  The jury should have been made aware of the truth and the full picture of the circumstances related to this case.  The defense had the duty and obligation to present this information to the jury to help assess the credibility.  Accordingly, the defense attorney should have called Grandmother to testify, should have called an investigator to testify, should have called an expert to testify, and should have developed the bias created by the benefits awarded to the alleged victim in this case.

18. The prosecutor in Mr. Pena's case bolstered the relationship between alleged victim and Grandmother in the closing argument claiming that she cooked meals for him and worked on her car to help her. This relationship was used to support the claim that the alleged victim was familiar with and knew who Mr. Pena was at the time of the incident. However, that simply did not happen. The information was false, and Grandmother needed to testify to explain that to the jury. Additionally, the witness claimed that Mr. Pena lived with Grandmother, but that was false too. Mr. Pena had his own apartment in Salem at the time, and Grandmother would have testified to her personal knowledge about the apartment, who lived there, and where Mr. Pena lived.

19. When Mr. Pena filed his first appeal seeking a new trial, his appellate lawyer failed to properly raise these issues for the Court's consideration. The Defendant asked his counsel handling his appeals to fully develop his claims for ineffective assistance of counsel, including raising all issues regarding bias, the benefits received, the failure to call Grandmother as a way to impeach and attack the credibility of alleged victim, and failed to properly raise the issues regarding what the alleged victim could actually see out the bedroom window from his vantage point. The trial lawyer and his lawyer handling the first appeal

for Mr. Pena failed to properly use the information regarding bias of the alleged victim, truthfulness of the alleged victim, and credibility of the alleged victim by failing to properly develop the ineffective assistance of counsel claims with the information available to the lawyers. Both lawyers should have used the bias information available, should have used the information provided by Grandmother, and should have used an investigator and experts to show additional pictures of the apartment, the bedroom, the parking lot, the window, and describe the vantage point from the bed inside the bedroom. The ability to see out of the bedroom window, or rather the lack of ability to see out of the bedroom window could have been easily developed and should have been developed at trial and during his first appeal filings by using investigator and an expert to show the actual view from inside, the angles and geometry involved, the distances involved, the visibility at night, the differences in views caused by standing or laying down, the differences in views caused by standing closer or further away from the window, the differences in views caused by standing at different sides of the window, and the relevant science regarding these issues that do not support the claims of the alleged victim that he could see the suspect from the bed or

different areas of the bedroom and his actual vantage point while inside the first floor bedroom. The defense witnesses could have presented the jury with a clear understanding of what the alleged victim's line of sight would include on the night in question. The view from his bedroom would have been very limited, and the inconsistencies of the witness that were developed slightly from cross-examination could have been highlighted and attacked properly by use of defense witnesses in Mr. Pena's case in chief. The investigator would explain with firsthand knowledge what could be seen from the bed, from various positions in the room, and even what could or could not be seen if somehow standing right at the window at night with car headlights distracting the view. This material information was not developed properly at trial and was not properly developed as part of his first appeal. Mr. Pena was denied effective assistance of counsel when his lawyers failed to properly investigate this issue, prepare this issue, and failed to present competent sufficient evidence regarding the visibility through that window with the use of defense witnesses.

20. The alleged victim lied to the jury several times. The defense was not properly prepared to attack the false information with witnesses readily available to the

defense.  The defense should have called Grandmother, an investigator, and an expert as discussed.  The false testimony of the alleged victim will be developed further as part of Mr. Pena's motion for new trial that successor counsel is working on with an investigator.

21. It is a well settled area of law across the Federal Courts that "the presentation of false evidence violates due process. See *Napue v. Illinois,* 360 U.S. 264, 269 (1959) ("[A] State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction. . . ."); *United States v. LaPage,* 231 F.3d 488 (9th Cir. 2000) ("The due process clause entitles defendants in criminal cases to fundamentally fair procedures. It is fundamentally unfair for a prosecutor to knowingly present perjury to the jury."). If the false evidence is material — that is, reasonably likely to have affected the judgment of the jury — the defendant's conviction must be reversed. *United States v. Agurs,* 427 U.S. 97, 103 (1985). Here, the record reveals that Minier permitted Colman to testify that she did not expect to receive any benefit in exchange for her testimony, knowing that her testimony was highly questionable at best, and that he had twice promised such a benefit to Colman's attorneys." See *Phillips v. Woodford*, 267 F.3d 966, 985 (9th Cir. 2001). In Mr. Pena's

case, the trial was polluted with false testimony by the alleged victim. The false testimony was predictable, and the defense for Mr. Pena should have included the witnesses to attack the false testimony offered by the alleged victim in the Commonwealth's case in chief. Mr. Pena was denied a fair trial, denied due process, and denied effective assistance of counsel.

22. Generally, the Court will not deem counsel to be ineffective if counsel's strategy not to call a witness had some reasonable basis designed to effectuate his client's interest. The failure to call a possible witness will not always create a claim for ineffective assistance; however, when there is some positive demonstration that the testimony would have been helpful to the defense, then the trial attorney needs to present the witness to effectively represent the defendant. In Mr. Pena's case, there was no reasonable basis designed to effectuate the Defendant's interest by failing to call Grandmother as a witness at trial to attack the credibility of the alleged victim and by failing to call an investigator and failing to call expert witness at trial to attack the credibility of the alleged victim regarding the view through the bedroom window. These were material issues for the jury's consideration and crucial for Mr. Pena's defense.

23. The Defendant's case turned on the credibility of the alleged victim as he claimed he was attacked by Mr. Pena and claimed through circumstantial evidence that he saw Mr. Pena in the parking lot that night through the bedroom window and claimed he was rather familiar with Mr. Pena due to his experience and interactions with Grandmother and her family as discussed above. Both said defense witnesses would have helped the defense's case substantially. The failure to call said defense witnesses at trial could not be deemed a strategic decision as there was no harm in presenting this evidence; instead, the evidence would have helped the defense in a material way. The claims of the alleged victim that he was attacked by Mr. Pena that night rise and fall on his credibility. Any possible attack on the alleged victim's credibility should have been properly investigated, developed, and used at trial to the full extent possible. Grandmother would have been very helpful for the defense, and an investigator and/ or expert witness would have been very helpful for the defense. The witnesses would have helped the jury evaluate the credibility of the alleged victim during their deliberations in a material way. The failures by his lawyers to prepare and use this evidence constitutes ineffective assistance of counsel.

24. Accordingly, Manuel Pena is seeking a motion for new trial with successor counsel to properly present the issues of ineffective assistance of counsel, bias, false testimony, and due process violations to the Court. The Defendant needs more time to prepare the issues as he was not properly able to prepare throughout the COVID-19 pandemic and the denial of access of the Law Library while at MCI-Shirley and Souza Baranowski State Prison facility. Due to the need for additional time that stems from issues out of his control, the Petitioner is seeking additional time to perfect his Habeas Corpus Petition and seeks an extension for as long as this Honorable Court will permit or for up to two years while Petitioner exhausts his remaining claims.

WHEREFORE, the Petitioner, Manuel Pena, respectfully requests that this Motion be ALLOWED.

The Petitioner,
MANUEL PENA,

*/s/ MANUEL PENA*
_____
MANUEL PENA
MCI-SOUZA BARANOWSKI
100 HARVARD RD
SHIRLEY, MA 01464

Date: 8/1/22

**CERTIFICATE OF SERVICE**

    I, Manuel Pena, the Petitioner, hereby certify that on this date I served a copy of this motion on the Attorney General's Office for the Commonwealth of Massachusetts by mailing a copy to their office.

    Date: 8/1/22         ***/s/ MANUEL PENA***
                                          _____
                                          MANUEL PENA